at all. Thank you. Good morning, I'm Attorney George Klingler for the appellant Thomas Hamann and I would like to reserve two minutes for about You may. Your Honor, this case is about an intentional interference with contractual relations. The plaintiff, Thomas Hamann, is a long time broker for classical cars. He had an exclusive agency contract with a gentleman by the name of Enzo Scandura for the sale of a 1953 Ferrari. Subsequent to the exclusive agency agreement, he was able to procure a buyer, a gentleman by the name of Dana Mecham, for the sale of the vehicle for $10.5 million with an executed contract and a deposit that was sent. Mr. Scandura was also in the classic car business in Italy and the vehicle in question was one of several that were in a collection of classic cars owned by a gentleman named Ganuti, who was also an Italian resident. Mr. Hamann found out that Mr. Carpenter, the defendant, appellee, had contacted Mr. Ganuti and offered $12.5 million for the vehicle that was already under contract and was going to Italy to inspect the vehicle. Mr. Hamann took every step possible, notified by email Mr. Carpenter. He called Mr. Carpenter's office to advise him that he had the exclusive right to sell this vehicle and that there was an existing contract with a deposit paid for the purchase of this vehicle. Now, Mr. Carpenter... So is it your allegation that that alone constitutes improper motive? No. The law has four elements. And where the issue is here is that the third element, which requires, in addition to intentional interference with a contract, something more. And the plaintiff has pled something more. The plaintiff has pled two different facts in his amended complaint. We establish the additional requirement under Massachusetts law. The first one is the plaintiff pled that Mr. Carpenter, in addition to inducing the breach of these two contracts, threatened Mr. Scandura that if he didn't breach the contracts with Mr. Hamann, that he would go to Mr. Ganuti and harm his relationship with Mr. Ganuti. Because Mr. Scandura was trying to sell not only this car, but a number of other classic cars. So he essentially put an economic gun to Mr. Scandura's head and said, if you don't sell the car to me and Mr. Wexner, my principal, I am going to cause you severe economic harm by interfering in this other relationship. That is an improper method of inducing a breach of contract. He did not just advance his own legitimate economic interest. He went beyond that. And the cases cited really by both parties state that you need something more beyond the intentional interference. You need an improper method or an improper motive. Well, assuming that that allegation is in the complaint as you say it is, what factual premise supports that that's in the complaint, that there's knowledge that that happened by someone? Well, the complaint states specifically, Your Honor, that Carpenter told Scandura, if you don't sell me the car, I will interfere with your relationship with Ganuti. But how does the plaintiff know this? How does the plaintiff know it? From Scandura. I mean, at this level, when we're dealing with a motion to dismiss, the plaintiff is not required to set forth his entire case. We have to plead. We don't even have to plead the elements. We have to prove. We have to have facts that are plausible and can hold up to the cause of action. And the case law says that using threats to interfere with a contract is improper. And that is exactly what the plaintiff pled here. The paragraph 29 of the complaint states, Carpenter pressured Scandura to break his contract with plaintiff by threatening Scandura that Carpenter would go directly to Ganuti and interfere with Scandura's relationship with Ganuti, which would result in Scandura losing the opportunity to sell the other car in Ganuti's collection. That is not the way to conduct business. That is improper. And it meets that improper element. The district court, who described this conduct as less than honorable, described this as tough business dealings. But this is not tough business dealings. Threatening somebody with the termination of their income that Mr. Scandura was depending on from these other cars, that's not in the context of fair commercial dealings or tough and rumble commercial dealings. You're saying you're going to deal with me, and if you don't, I'm going to destroy your business. That is not proper. That is not an advancement of a legitimate business right. And I think the district court, to say that's tough negotiation, I think it's not negotiation. It's coercion. There's a difference between tough negotiation, saying if you do this, I'm going to sue you because I have a right to, but to say to somebody else, I am going to destroy your business with this other person. If you don't deal with me, it's the same as somebody telling an employee, if you don't do this deal with me, I'm going to talk to your boss and get you fired. That's not proper. The other, the second aspect of it is. Thank you, Counselor. Thank you. May it please the Court, good morning. I'm Matthew Zeiger, and I'm here on behalf of Stewart Carpenter, Copley Motorcars, and Leslie Wexner. This is the fifth time that Mr. Hayman has filed a complaint. Two first in Connecticut, and now three times here in Massachusetts. Yet, even though five have been filed, no plausible claims have been asserted. The crux of the complaint, as Counsel just described, is that there's multiple tortious interference claims. And the question before the District Court was whether or not there were improper motives or means that were exercised by Mr. Carpenter when securing the Ferrari. The complaint only alleges hard bargaining. Well, let's take this. The complaint clearly alleges that there was a contract between the plaintiff and Scandura. That's what the complaint alleges. And there's no doubt about the sufficiency of that allegation that there was such a contract. I think the complaint also contradicts that in some ways. Insofar as one of the two comments that are attributed to Mr. Carpenter after Mr. Hayman allegedly gave him notice was that Mr. Carpenter had been contacted by seven different brokers related to the sale of this Ferrari for the same price. So I do think that that allegation that there was an exclusive agreement is undercut by the subsequent allegation. In addition to the allegation that there is a contract between the two of them, there's an allegation that Carpenter convinced Scandura to break that contract by telling Scandura that Carpenter would go to Gnudi and interfere with Scandura's relationship with Gnudi. Why isn't that an improper means? First of all, I think the District Court was correct in characterizing that as hard bargaining. That's not bargaining. Bargaining is you want $100 and I say I'm only going to pay you $90 and I'm not going to pay you a penny more and I'm going to take it off the table if you don't. I mean, it's perfectly legitimate. Threatening someone that, you know, you do this deal with me or else I'm going to go interfere with your relationship with a third party. That's not bargaining. Well, obviously we dispute the facts. But for purposes of today, I think that fact has nothing to do with the relief that Mr. Hayman is seeking. The question is whether it's an intentional interference with contract. A and B have a contract. C approaches B and says, break the contract. Do a deal with me instead or I'll interfere with you B's transactions with D. Isn't that classic intentional interference with? It's not. That's just the promotion of one's economic interest as the case law has found. Well, so is bank robbery. That doesn't help. What you need is you need that additional element that they've tried to plead unsuccessfully, which is the spite and ill will. There simply is nothing. No, you don't. Let me pause. Maybe I'm missing something. I thought under Massachusetts law you did not need spite and ill will if you had an improper means and you had an intentional interference. You do need the improper means and the way to get there if they're trying to do is through the spite and ill will because it's simply not enough. But I didn't see that. I saw them in paragraph 29. It simply says he made the threat to Skandura. There's no. And that's it. Let's let's suppose this. Suppose he sent to Skandura breach the contract with Hayman or I'll shoot your children. So any doubt at all that that would be intentional interference with contractual relationships? I don't believe there'd be any doubt in that. So all we're called to decide upon here is whether the lesser statement of saying I'm not going to shoot your children. But what I am going to do is interfere with your significant contractual relationships that you have in your business with a particular customer. Why isn't that, albeit not as serious, also an improper threat that's at least sufficient for pleading purposes under Rule 12 to check the box next to whether is an allegation of improper means? I just don't I don't feel that it gets there. This is simply a negotiation over the car and the statement that he's going to go. The allegation that he's going to go and and talk to Gnudi about it. If it's not sold to him, one, I don't believe arises to that level. But you didn't say he's going to go to Gnudi and talk to him about it. He said he's going to go to Gnudi and interfere with Skandura's relationship with Gnudi. Well, to Judge Thompson's point, the first question is how is that possibly known by Mr. Hayman? Well, that's a Rule 56 issue. He's alleged it. I would guess it's because Skandura told him, but we don't do that at Rule 12 purposes. We ask, is it plausible that that happened? And I don't see why it's not plausible that that happened. Well, I don't believe that the alleged threat arises to a level of an improper means. But just pinning that down, because I had some confusion. So you're not saying that they didn't plead enough. You're saying that what they plead, pled, didn't establish the cause of action. Correct. There's no improper means that was pled. I agree that that's what Paragraph 29 says. And Paragraph 29 came in in the fifth complaint that was filed. So it wasn't in the first four complaints, but it did make its way into the fifth one. I don't believe that that arises, that allegation alone arises to satisfy the improper means. That would be quite a significant, if we held that even under the Rule 12 standards, that an allegation that someone threatened to interfere with a person's contractual relationships with a significant customer, that there was nothing improper about that, we would not just be making a pleading decision. We'd be saying, as a rule of law in Massachusetts, you can do that with impunity. That would be quite remarkable. Well, I think something to focus on is the fact that that contract has nothing to do with the alleged recovery that's sought. As you know, the fourth prong of the tortious interference claim requires Mr. Heyman to prove that damages were approximately caused by my client's conduct. But he's saying that he had a client under contract who would have bought the car but for your client's interference. But he is seeking a commission from the sale of the car due to an exclusive contract that he claims he had with Scandura. Scandura, regardless of who purchased the car, if he was the exclusive agent, should have been paid a commission. So our contention all along is, we paid $2 million more for the car than Mr. Heyman had secured through Mr. Megham. So there was $2 million more to pay the commission. And Mr. Heyman has said in his complaint, the reason why the commission wasn't paid was either Scandura kept the money himself, or alternatively, he just was overextended vis-a-vis the annuity. So there is no proximate cause between the loss of the commission and that our client's conduct, as alleged, made it more likely that Mr. Heyman would get his commission. But you're just saying Scandura breached his contract with Heyman. Right. If Mr. Heyman has a claim that's against Mr. Scandura, not against the appellees. But in the context of intentional infliction of contractual relationships, intentional interference, it's almost always true that you also have breached a contract claim against the party with whom the third party interfered. That's correct. But you still have to establish the fourth prong of the tortious interference claim, which is damage. And here there isn't any. And it has to be approximately caused by our folks' conduct. Well, if Scandura had performed, wouldn't Heyman have some money that he doesn't now have? I find it remarkable that Mr. Heyman would get money when the purchase price was $10.5 million versus the $12.5 that my client paid. Because Heyman didn't produce your client. It doesn't matter. This is a commission contract between Heyman and Scandura, not between Heyman and Meeham. So the appellant understands this tension. Wait a minute. Did Carpenter get his commission? Mr. Carpenter? Yes. Mr. Carpenter is not paid through the transaction. He's paid by his principal. So the answer is no. And in fact, it pleads that 400,000 euro apparently was sent to a Monaco bank account, which he's asking you to assume on the reply brief in the appeal, which is improper, that that went to Carpenter. But he still got paid. By Mr. Wexner through his normal instance, not through the transaction. So, and Mr. Scandura is from Monaco. But he got paid for the transaction. That's correct, Your Honor. It sounds like you're saying Scandura would have breached here, assuming there is a contract, no matter what your client did. The complaint alleges that he was overextended to communities. So you would assume that he does not, if he cannot pay the commission with $12.5 million in his pocket, he certainly cannot pay it with $10.5. And if we deem that a reasonable inference to draw here, then I come back still to the Rule 12 standard. I don't think we customarily ask, are there reasonable explanations for what is alleged, or could the defendant likely win, or will he have trouble proving his damages? We simply ask whether the allegation that there was an intentional interference with a contractual issue is plausible based on the facts produced. And I'm not quite sure why this theory of no damages or breach that would have occurred anyhow is so clear that it would be implausible to assume otherwise. Well, I think, Your Honor, that that's just simply the fourth required prong. And I don't believe that they've proved improper motive or the damages. And as such, they're even at the 12B6 standard under the cases cited in the brief. It's appropriate for the court to affirm the district court. I just had one more technical question. The file seems to contain two different versions of the complaint, the amended complaint. Your Honor, my understanding is that there was a Connecticut action before. There are two filed there. I assume you're only talking about the Massachusetts. There is an original complaint. There is an amended complaint that was filed. Mr. Hayman sought relief to file after we filed another motion to dismiss. Mr. Hayman sought relief to file another one saying that there had been a filing error and that he had filed the wrong complaint. The court gave him the opportunity to file a third complaint, which he did. And so I understand there's one operative complaint. Is that the one that's paginated or the one that isn't paginated? Your Honor, the copy that I have is paginated, has the page numbers on it. Thank you. Thank you, Your Honor. Very quickly, Your Honor, yes, the original case was brought in Connecticut and was ultimately dismissed on jurisdictional grounds. And then the action was brought in Massachusetts. Do you want to confirm that the paginated version is the correct version? The paginated is the correct version, Your Honor. The Massachusetts law requires improper means or motive, not both. So we spent a lot of time talking about the improper means being the threat. Plaintiff also pled improper motive, alleging that Carpenter pled or had ill spite and will against Hayman and communicated that to him. The district court felt that that was insufficient. And there is case law that says that allegation, that the mere allegation of ill will or spite is insufficient. But in this case, you have two gentlemen who have been in the same very narrow, high-end classic car business for 40 years. They are competitors for very few sales around the world. He, Carpenter, destroyed his exclusive agency contract. He destroyed the contract for $10.5 million, and he threatened Scandura. What do you say about this? As I understand the argument, it's that as things, in fact, developed rightfully or wrongfully, Scandura received a larger commission than he otherwise would have received. And if he still didn't pay your client the amount that your client would have been done under the lower-sale contract, then it's implausible that he would have paid your client otherwise. So having the benefit of knowing a lot more than is in depleting, except for the paragraph that deals with causation, Scandura had a $10.5 million... I think you need to stick to the complaint. Okay, so Scandura had a $10.5 million contract with Hayman. He had $12.5 million that he collected from Carpenter. But as the complaint alleges, payments were made to Gnudi. Payments were made to others. And by the time all the commissions to all the different people involved, the money that was left for Scandura was substantially less than he would have had when the $10.5 million... Is there an allegation? Does the complaint allege that? Yes. And one other quick question. Is there a plausible inference that had the original $10.5 million contract been performed, the money would have flowed from Ultimate Purchaser through your client to Scandura? So your client actually would have had self-help available to him. Exactly. He would have had the money. So there's no question he would have collected his commission. Money would have been paid and he would have been... The money would have gone through him and he would have had his commission. But having had this other deal and other people involved in this transaction, by the time all the different people, the commissions, paragraph 35 said commissions, Gnudi, Carpenter, despite what counsel says, paragraph says commissions. There were multiple people that had their hand in this sale. And by the time Scandura finished paying all these people, he didn't have enough left to pay Haman, and that's why Haman lost his commission. Thank you. Thank you.